# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

**VINCENT GALELLA,**

    **Plaintiff,**

**v.**                             **Case No. 2:12-cv-462-Ftm-29DNF**

**COMMISSIONER OF SOCIAL SECURITY,**[1]

    **Defendant.**

_____

# REPORT AND RECOMMENDATION

# TO THE UNITED STATES DISTRICT COURT

    This cause is before the Court on Plaintiff's Complaint (Doc. 1) filed on August 24, 2012. Plaintiff, Vincent Galella, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for Social Security Disability Insurance Benefits. The Commissioner filed the Transcript of the proceedings (hereinafter "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, it is respectfully recommended that the decision of the Commissioner be **Affirmed** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. FED. R. CIV. P. 25(d). No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

### I.  Social Security Act Eligibility, the ALJ Decision, and Standard of Review

#### A. Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§404.1505, 416.905.  The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

#### B. Procedural History

On August 13, 2008, Plaintiff filed an application for Disability Insurance Benefits asserting a disability onset date of September 1, 2007. (Tr. 97-99).  These claims were denied initially on May 22, 2009, and denied upon reconsideration on August 25, 2009. (Tr. 89-90).  A hearing was held before Administrative Law Judge ("ALJ") Ronald S. Robbins on November 2, 2010, and ALJ Robbins issued an unfavorable decision finding Plaintiff not disabled. (Tr. 32-60, 17-27).  On February 3, 2011, Plaintiff requested the Appeals Council review the ALJ's decision. (Tr. 16). The Appeals Council denied review on June 27, 2012. (Tr. 1-7).  Plaintiff filed the instant action in federal court on August 24, 2012. (Doc. 1).  This Court has jurisdiction to review the ALJ's decision under 42 U.S.C. Section 405(g).

### C. Summary of the ALJ's Decision

The ALJ found, by decision dated January 20, 2011, that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light work with certain exceptions such as climbing ladders, ropes, or scaffolds. (Tr. 22-26).  The ALJ evaluated Plaintiff's application through the sequential evaluation process pursuant to 20 C.F.R. 404.1520(a).  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 1, 2007. (Tr. 22).  ALJ Robbins further noted that although the earnings of the seasonal work did not constitute substantial gainful activity, ((20 C.F.R. 404.1574(b)(3)) Plaintiff's continued work demonstrates the ability to endure physical functions required for work. (Tr. 22).

At step two, the ALJ found that the plaintiff suffered from the following severe impairments: degenerative disk disease, degenerative joint disease, history of coronary artery disease, hypertension, hyperlipidemia, and chronic lower back pain. (Tr. 22).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed requirements in 20 C.F.R. 404, Subpart P, Appendix 1, (20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 22).  The ALJ found that these "severe" impairments do not meet the criteria of any listed impairments described in Appendix 1 of the regulations (20 C.F.R., Subpart P, Appendix 1).  The ALJ stated that no findings have been mentioned by the treating or examining physicians that are equivalent in severity to the criteria of any listed impairment, nor has any evidence been found to show that the medical findings are the same or equivalent to any impairment in the Listing of Impairments. (Tr. 22).

At step four, the ALJ found that Plaintiff has the RFC to perform light work except that plaintiff can only occasionally climb ramps and stairs; and Plaintiff can never climb ropes,

ladders, or scaffolds. (Tr. 23). The ALJ found that Plaintiff is able to perform his past relevant work as a sales representative/order taker, as it does not require the performance of the listed activities precluded by the Plaintiff's RFC. (Tr. 26). The ALJ concluded that Plaintiff was not disabled as of September 1, 2007. (Tr. 26).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; accord, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Review of Facts and Conclusions of Law

### A.  Background Facts

Plaintiff was born on September 8, 1948, and was sixty-two years old on the date of the ALJ's decision. (Tr. 36).  Plaintiff's date last insured for disability benefits was March 31, 2011. (Tr. 35).  He graduated high school and completed four years of college. (Tr. 133)  He served in the Army Reserve for six years and was honorably discharged. (Tr. 39).   He currently resides with his son. (Tr. 39).   He currently works part-time for a company named Primerica making phone calls and receiving commission-based pay. (Tr. 43-44). Plaintiff only works on days that he feels his health will allow it and even then he only works for a couple of hours. (Tr. 43-44). Plaintiff previously worked as a sales representative. (Tr. 38, 129).  His position was found by a vocational expert to be sedentary and semi-skilled. (Tr. 38, 129).  Plaintiff claimed that the first time when his condition interfered with his ability to work was September 20, 2001. (Tr. 128).

Plaintiff alleged he had become totally disabled on September 7, 2007, citing lower back pain as the cause. (Tr. 97, 135).  Plaintiff alleges the following as limiting his ability to work: heart condition, herniated disc, arthritis, high cholesterol, and degenerative disc disease. (Tr. 127).  He claims the back pain is on a daily basis and is located at the bottom of the spine. (Tr. 52-53, 166).  Although medication is prescribed for the pain, Plaintiff does not take it due to it causing drowsiness and fatigue. (Tr. 35).   Plaintiff claimed he has difficulty while bending, standing, sitting, and reaching. (Tr. 135).  Plaintiff claimed to be able to stand for fifteen to twenty minutes, sit for an hour, and lift five or six pounds. (Tr. 47-48). Five hours of his day is spent lying down. (Tr. 53).

In an average week, Plaintiff walks slowly on a treadmill two days, selectively attends work at Primerica, and attends church on Saturdays. (Tr. 54). Plaintiff is able to complete personal functions such as bathe, wash his hair, and cook meals. (Tr. 48, 50). His son assumes the heavier housekeeping duties such as setting out the garbage, mopping, and vacuuming. (Tr. 50). Plaintiff occasionally drives when necessary—in one instance as far as Fort Lauderdale. (Tr. 51-52). During a recent trip to New York Plaintiff was able to ride on the train. (Doc. 17 at 8).

Plaintiff described working part-time after the alleged onset date as security and a concession vendor during baseball games at Hammond Stadium. (Tr. 41-42). Plaintiff first worked the concessions before transferring to a seated security position due to his back pain. (Tr. 41-42). Plaintiff ended this work in 2008 and beginning in 2009 until the present has worked part-time for Primerica. (Tr. 43). Following the alleged onset date Plaintiff also reported lifting weights five days a week and exercising on a treadmill for forty minutes, three days a week. (Tr. 350).

**B.  Summary of Medical Evidence**

Plaintiff included a great deal of medical evidence from years prior to his onset date. The Court reviewed all of the medical evidence provided by Plaintiff and will include a brief summary of some of the relevant medical evidence for the years prior to the onset date of September 1, 2007. In 1999 plaintiff suffered from a heart attack and subsequently underwent a 7-vessel coronary artery bypass graft.[2] (Tr. 350).

From March 14, 2001, through May, 2006, Plaintiff occasionally visited Mid-Hudson Medical Group. (Tr. 185-345). On March 14, 2002, Plaintiff visited an unspecified doctor with

---

[2] Plaintiff had past medical complications with his heart but did not provide detailed medical records to the court—presumably due to the primary medical claim for disability being back pain. This information was obtained from check-up reports from treating physicians.

the Mid-Hudson Group claiming he was diagnosed with lumbar disc disease and was already being treated by a physical therapist for the pain. (Tr. 295).[3]  On August 21, 2002, Plaintiff was diagnosed by the Mid-Hudson medical group with high cholesterol. (Tr. 250).  On January 10, 2003, Arthur H. Groten, M.D. examined Plaintiff and reported his heart is within normal limits of size without pulmonary vascular congestion. (Tr. 249).  This examination also showed no abnormal lymph nodes and was considered a normal postoperative study. (Tr. 249).

On January 29, 2003, Plaintiff visited Dr. Groten claiming acute lower back pain. (Tr. 195, 248, 285).  After an examination the doctor noted Plaintiff was able to walk on the tips of his toes. (Tr. 195, 248, 285).  After further examination Dr. Groten reported Plaintiff's disc space was narrowing at the lumbosacral junction with early sclerosis and hypertrophic change. (Tr. 195, 248, 285).  Dr. Groten otherwise reported Plaintiff's disc spaces were well maintained and vertebral stature was normal throughout with his sacroiliac joints appearing normal. (Tr. 195, 248, 285).  Dr. Groten concluded findings as disc disease at the lumbosacral junction. (Tr. 195, 248, 285).  Plaintiff was prescribed Naprosyn for the pain. (Tr. 195, 248, 285).

On March 4, 2004, Plaintiff underwent a Nuclear Stress Report conducted by Michael Schoolman, M.D. of Comprehensive Cardiac Care, P.C. (Tr. 254).  Test results show there was normal wall motion post-stress along with normal perfusion. (Tr. 254).  The overall impression was that the study was normal. (Tr. 254).

On May 5, 2005, Patient visited Narendra Patel, M.D. with the Mid-Hudson Medical Group for an examination where he disclosed having "degenerative lumbar disc." (Tr. 213).  Plaintiff's chest was also examined, which showed no acute cardiopulmonary abnormalities or changes since he was last examined by Dr. Patel in 2004. (Tr. 213).  Plaintiff was examined by

---

[3] Plaintiff claims being diagnosed with lumbar disc disease at this time but the court is unable to find any evidence in the files provided which show the diagnosing physician during the years prior to this claim.

Ramon Tenreiro, M.D. of the Mid-Hudson Medical Group on May 12, 2006. (Tr. 244).   Dr. Tenreiro noted that views of the chest had shown good inspiratory effort. (Tr. 244).   It was also noted that the cardiac silhouette is borderline enlarged and the mediastinum and trachea are normal in appearance. (Tr. 244).   Dr. Tenreiro also noted mild degenerative changes in the thoracic spine. (Tr. 244).

On November 30, 2006, Plaintiff visited David Martin, M.D. as a new patient to establish a primary care physician. (Tr. 410).   Plaintiff complained of no active problems and reported no musculoskeletal pain, swelling, or cramps. (Tr. 410).   Dr. Martin reported patient as being stable from a cardiac standpoint. (Tr. 410).   Dr. Martin also reported Hypertension, which was noted as controlled on current medications, as well as Hyperlipidemia. (Tr. 410).

Plaintiff visited R. Paul Liccini, M.D. on January 24, 2007. (Tr. 346, 466).   Dr. Liccini, in his letter to Dr. Martin, noted that Plaintiff exercised six days a week. (Tr. 346, 466).   Three days a week he walked outside for thirty minutes, and three other days he exercised on a treadmill for forty minutes. (Tr. 346, 466).   Plaintiff never reported any exertional chest pain, epigastric pain, arm pain, jaw pain, or dyspnea. (Tr. 346, 466). Dr. Liccini further noted that Plaintiff has cardiac risk factors such as hypertension and hypercholesterolemia and that his past medical history surrounding these is remarkable. (Tr. 346, 466).   Plaintiff's daily medications at the time included metroprolol XL 25 mg, TriCor 145 mg, Niaspan 2,000 mg, Plavix 75 mg, Omega-3, Zetia 10 mg, Welchol 625 mg, folic acid 400 mcg, and p.r.n. Naprosyn. (Tr. 346, 466). Plaintiff's cholesterol levels were "outstanding" while on the TriCor, Niaspan, Zetia, and Welchol. (Tr. 346, 466).

On May 18, 2008, Dr. Martin examined Plaintiff for an annual physical. (Tr. 408, 501). Plaintiff's main complaint was pain in his right shoulder with no known injury. (Tr. 408, 501).

Plaintiff claimed he had difficulty lifting his shoulder for weeks but at the time of the visit the symptoms had almost completely resolved. (Tr. 408, 501).  The pain did not interfere with his activities of daily living. (Tr. 408, 501).  The medical record reflects that Plaintiff had no complaints of back pain, neck pain, or gait disturbance. (Tr. 408, 501).  At the conclusion of the examination Dr. Martin noted that Plaintiff was stable from a cardiac standpoint. (Tr. 408, 501).

Plaintiff visited Dr. Liccini on November 7, 2007, for a return visit examination. (Tr. 349, 465, 531).  The report noted that Plaintiff exercised in the gym three days a week for thirty minutes on the treadmill and has no exertional chest, arm, jaw, or leg pain. (Tr. 349, 465, 531).  A cardiac examination showed normal S1-S2, without S3 or murmurs—but Plaintiff did have S4. (Tr. 349, 465, 531).  Cholesterol levels were noted as quite good and Dr. Linccini suggested Plaintiff may not need all of the current medications given how outstanding his lipids were. (Tr. 349, 465, 531).

On May 19, 2008, Plaintiff visited Dr. Martin for an annual physical without complaints. (Tr. 397, 490).  The examination was unremarkable and Dr. Martin noted that Plaintiff was stable from his current therapy for coronary artery disease. (Tr. 397, 490).  Plaintiff again visited Dr. Martin on August 8, 2008, with two complaints—a chronic cough and lower back pain. (Tr. 393).  Plaintiff reported radicular symptoms down the left leg as a result of his back pain and also pain in the middle of his back. (Tr. 393).  During a physical exam Dr. Martin reported minimal palpation over the lumbar spine and also that Plaintiff's right patella reflex was decreased compared to the left. (Tr. 393).  Dr. Martin ordered Plaintiff to consult with a physical therapist and also requested an x-ray of the left spine and chest. (Tr. 393).  The x-rays of the left spine taken on August 8, 2008, were indicative of degenerative disc disease with endplate changes and possible stenosis bilaterally at L5-S1. (Tr. 381, 457).  Aortic vascular calcifications

were also present. (Tr. 381, 457).  The x-ray of the chest showed the lungs were well expanded and clear bilaterally. (Tr. 457, 458).  The overall impression noted that Plaintiff had no acute cardiopulmonary pathology. (Tr. 457, 458).

On August 12, 2008, Jonathan Daitch, M.D. examined the Plaintiff's x-rays taken on August 8, 2008, and found no evidence for a vertebral body fracture. (Tr. 379).  Dr. Daitch also found an endplate degenerative marrow change at the L5-S1 vertebral body level. (Tr. 379).  Dr. Daitch's ultimate impression was that Plaintiff had mild multilevel degenerative disc disease, which appears most pronounced at L4-5 and L5-S1. (Tr. 379).  There was no MRI evidence found for canal stenosis. (Tr. 379).  Dr. Daitch also found mild straightening of the expected lordosis of the lumbar spine which is comparable to a muscle spasm. *Id.*  On August 14, 2008, in a letter to Dr. Martin, Robert Volski, P.T., discussed his findings after examining the Plaintiff. (Tr. 479).  Mr. Volski found that Plaintiff has limited range of motion in the lumbar spine due to stiffness and pain. (Tr. 479).  Manual muscle testing was done in the lumbar spine and Mr. Volski noted that the flexion was strong and painless as was extension, however resisted side bending was strong and slightly painful. (Tr. 479).  Mr. Volski reported that Plaintiff's gait was affected by this problem resulting in an antalgic gait pattern. (Tr. 479).  Lastly, Mr. Volski noted the lower facets at L4-5 and L5-S1 on the left were provoking as well as L5-S1 on the right.(Tr. 479).  Following the examination Dr. Martin drafted a physical therapy plan of care for Plaintiff, which called for passive and active exercises three times a week for four weeks. (Tr. 481).

On September 8, 2008, Plaintiff visited Dr. Liccini for a routine follow-up visit. (Tr. 350, 463, 529, 646). It is stated in the report that Plaintiff discussed exercising on a treadmill for forty minutes three days a week and doing some weightlifting five days a week. (Tr. 350, 463, 529, 646).  Plaintiff reports no pain in the chest, arms, jaw, or leg pains following the workout. (Tr.

350, 463, 529, 646).  Plaintiff did note being limited by worsening back pain, which had become quite severe. (Tr. 350, 463, 529, 646).  Plaintiff claimed he had scoliosis and osteoarthritis of the lumbar spine and had attended physical therapy to help with these problems for two months to no avail. (Tr. 350, 463, 529, 646).  Dr. Linccini also noted that Plaintiff showed no exertional chest difficulties when exercising and that his limitations were primarily due to back problems. (Tr. 350, 463, 529, 646). On September 9, 2008, Plaintiff underwent a stress echocardiogram requiring him to exercise on a treadmill. (Tr. 352, 453, 519, 644).  Plaintiff had to stop after seven minutes due to knee pain. (Tr. 352, 453, 519, 644). Dr. Liccini noted that Plaintiff had a moderately reduced exercise capacity but suffered no chest pain or arrhythmia with exercise. (Tr. 352, 453, 519, 644).

On September 15, 2008, Plaintiff visited Dr. Daitch for a consultation regarding his back pain. (Tr. 354, 373, 474).  Plaintiff reported sharp back pain, level 9 on a 2-10 range, which is more on the left side and worsens with sitting, walking, and standing. (Tr. 354, 373, 474).  As a result he had difficulty sleeping, loss of energy, anxiety, and nightmares. (Tr. 354, 373, 474). Dr. Daitch noted that Plaintiff had decreased lumbar range of motion about 50% throughout and his torso was one or two inches to the left creating an uncompensated scoliosis. (Tr. 354, 373, 474).  An MRI of the lumbar spine showed mild multilevel disc disease—most pronounced at L5-S1. *Id.*  Dr. Daitch diagnosed Plaintiff with degenerative disc disease likely in the L5-S1 region with possibility of L4-5 pain and recommended transforaminal injections. (Tr. 354, 373, 474). Dr. Daitch's other impressions included possible left sacroiliac joint pain, uncompensated scoliosis, and coronary artery disease. (Tr. 354, 373, 474).  With regard to Plaintiff filing for Social Security Disability, Dr. Daitch noted that he certainly has back problems as well as cardiac problems. (Tr. 354, 373, 474).

On September 23, 2008, Dr. Daitch administered sacroiliac joint injections as well as transforaminal lumbar epidural steroid injections. (Tr. 361, 440).   Both injections reduced Plaintiffs pain from a 7/10 level of pain pre-procedure to a 2/10 level of pain post-procedure. (Tr. 361, 440).   Plaintiff returned to Dr. Daitch on October 15, 2009, for another transforaminal lumbar epidural steroid injection, claiming the last treatment only relieved his pain for five days. (Tr. 367, 471, 534).   Following the procedure Plaintiff reported a pain level decrease from 7/10 pre-procedure to 5/10 post-procedure. (Tr. 367, 471, 534).   Plaintiff also underwent a procedure on October 22, 2008, to ease pain in the lumbar branch blocks. (Tr. 370, 446, 512).   The procedure reduced Plaintiff's pain rating from 6/10 to 5/10 post-procedure. (Tr. 370, 446, 512).

On October 31, 2008, Dr. Daitch filled out a multiple impairment questionnaire regarding the Plaintiff upon his counsel's request. (Tr. 383).   In this form Dr. Daitch diagnosed Plaintiff with lumbar discogenic pain and low back pain and listed his prognosis as guarded. (Tr. 383). Justifying this diagnosis, Dr. Daitch listed clinical findings such as lower back tenderness, pain with change in position, and an illegible portion regarding three disc MRI's. (Tr. 383). For laboratory and diagnostic test results to support his diagnosis, Dr. Daitch listed lumbar MRI's and disc disease at three levels. (Tr. 383). Dr. Daitch estimated Plaintiff's pain at a six or seven. (Tr. 383). He also estimated Plaintiffs RFC as being able to sit, stand, or walk zero to one hour per work day. (Tr. 383).   Dr. Daitch found Plaintiff must get up and move around every twenty to thirty minutes and may sit again after five to ten minutes. (Tr. 383).   Dr. Daitch determined Plaintiff was able to lift and carry ten to twenty pounds occasionally and has significant limitations doing repetitive reach, handling, fingering, or lifting. (Tr. 383).   Dr. Daitch opined that Plaintiff's symptoms would likely increase in a work environment and his condition would interfere with the ability to keep his head in a constant position viewing a computer screen. (Tr.

383).  It was also found that Plaintiff would need to take ten-minute breaks often in an eight-hour work day. (Tr. 383).

Plaintiff underwent another transforaminal lumbar epidural steroid injection on November 7, 2008, stating that prior injections led to a fifteen percent improvement and ongoing relief of pain. (Tr. 437, 503).  The procedure reduced Plaintiff's pain levels from 7/10 to 6/10. (Tr. 437, 503).  Plaintiff reported this procedure as not helpful and on November 14, 2008, Dr. Daitch administered a sacroiliac joint injection. (Tr. 460, 526).  Plaintiff's pre-procedure pain level of 9/10 was lowered to 7/10 following the procedure. (Tr. 460, 526).

On November 25, 2008, Plaintiff visited Dr. Martin for a six-month follow up for his lower back pain. (Tr. 391, 484).  It was noted that the last MRI did show some degenerative changes and that Plaintiff was to continue on with pain management. (Tr. 391, 484).

Plaintiff visited Dr. Martin on May 26, 2009, for a general physical with no medical complaints. (Tr. 565, 595).  This included no complaints of back pain, neck pain, or gait disturbance. (Tr. 565, 595).   The exam was unremarkable with Dr. Martin noting only maintenance plans for current health. *Id.*  On September 17, 2009, Plaintiff visited Dr. Liccini for a follow up. (Tr. 584).  Plaintiff reported exercising on a treadmill for thirty-five minutes three days a week without chest, arm, jaw, or leg pain. (Tr. 584).  Lumbar spine pain was reported, but no leg numbness. (Tr. 584).  Chest and cardiac exams were normal. (Tr. 584).

On January 28, 2010, Dr. Stein completed a multiple impairment questionnaire regarding Plaintiff. (Tr. 615, 635).  Dr. Stein reported that in an eight hour day Plaintiff can only sit, stand, or walk up to one hour. (Tr. 615, 635).   Dr. Stein also found that Plaintiff can occasionally lift or carry up to 10 pounds. (Tr. 615, 635).  It is also reported that Plaintiff's experience of pain would constantly interfere with attention and concentration. (Tr. 615, 635).  In a letter addressed to

Plaintiff's counsel, Dr. Stein noted that Plaintiff's only alternate option for treatment was surgery to which he declined. (Tr. 615, 635).  Dr. Stein also agreed that Plaintiff has degenerative disc disease at L4-5 and L5-S1. (Tr. 615, 635).  The prognosis is listed as poor without the form of treatment and the patient is reported as being a candidate of Social Security Disability in his current status. (Tr. 615, 635).

Plaintiff underwent a rheumatology consultation for an abnormal lab on March 9, 2010, with Jack Clark D.O. (Tr. 714).  There, Dr. Clark took x-rays of Plaintiff's knees and shoulders and found no abnormalities or fractures. (Tr. 714).  After an x-ray of the back Dr. Clark noted Plaintiff's degenerative disc disease at L5-S1. (Tr. 714).  It was also Dr. Clark's impression that Plaintiff has no evidence of rheumatoid arthritis. (Tr. 714).  In a lipid profile dated March 12, 2010, Dr. Clark noted elevated liver enzymes, elevated inflammation blood test, and elevated blood sugar. (Tr. 710, 709-130).  On March 15, 2010, Plaintiff visited Dr. Clark for a follow-up on these labs. (Tr. 700-08).  At this time Plaintiff reported feeling better and Dr. Clarks only impression was that an x-ray taken of the left spine was comparable to those taken previously where Plaintiff was found to have degenerative disc disease. (Tr. 700-08).

Dr. Daitch, in a letter dated April 5, 2010, wrote to Plaintiff's counsel concerning his disabled status. (Tr. 633).  It is Dr. Daitch's opinion that Plaintiff has degenerative disc disease mainly at L5-S1 and some at L4-5, as well as possible left sacroiliac pain and uncompensated scoliosis. (Tr. 633).  Dr. Daitch also suggested that Plaintiff will need long term medication and that his prognosis is poor, with his condition likely lasting the duration of his lifetime. (Tr. 633).  He does not feel Plaintiff is capable of full-time work as he has difficulty sitting, standing, or walking for more than thirty minutes at a time. (Tr. 633).  Dr. Daitch described Plaintiff as disabled and opined that it would last for the duration of his life. (Tr. 633).  On April 9, 2010,

Plaintiff visited Dr. Clark for a follow-up appointment complaining of shoulder and knee pain. (Tr. 676-83, 758).  X-ray's for both shoulders and knees showed no significant abnormalities. (Tr. 676-83, 758).

Plaintiff visited Dr. Liccini on September 15, 2010, for a follow-up. (Tr. 640). While there Plaintiff stated that he stopped physical therapy but he was exercising on a treadmill for thirty-five minutes two days a week without chest, arm, jaw, or leg pain. (Tr. 640).  Dr. Liccini noted no significant findings and suggested Plaintiff maintain his current medications. (Tr. 640). On October 1, 2010, Plaintiff followed-up with Dr. Martin who found nothing remarkable. (Tr. 656).

On November 3, 2010, Plaintiff was diagnosed with new-onset diabetes by Dr. Guillermo Bohm. (Tr. 779). After discussing going on medication for his diabetes with Dr. Bohm, Plaintiff opted to start a diet and exercise program to see how much he is able to control. (Tr. 779).

### C.  State Agency Evaluations

On May 12, 2009, Plaintiff was examined by Kenneth Berdick, M.D. with complaints of lower back pain. (Tr. 555).  Plaintiff reported the pain was exacerbated by bending, lifting, prolonged standing, and changes in the weather and improved somewhat by his medications which include Hydrocodone three to four times a day. (Tr. 555).  Plaintiff says that the pain limits his ability to do most work around the house but he does go on a walk daily. Dr. Berdick's assessment listed Plaintiff as having degenerative joint disease and marked restriction to lumbar spine flexion but no neurological deficits. (Tr. 555).  Grip strength, finger dexterity, and gait were all normal and Plaintiff was noted as stable from a cardiopulmonary standpoint. (Tr. 555).

On May 20, 2009, Tami Dodd, listed as a Single Decision maker on behalf of the state, filled out a Residual Function Capacity Assessment regarding Plaintiff. (Tr. 557-564).  Ms. Dodd

determined that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, stand and/or walk for six hours in an eight-hour work day, sit for six hours in an eight-hour work day, and was unlimited in the push and/or pull operation for hand and/or foot controls. (Tr. 557-564). In support of these determinations, Ms. Dodd noted that Plaintiff has normal hip extension, all joints move in a full range of motion without difficulty, his grip, strength, finger dexterity, and gait are normal, and he needs no assistive device to get around. (Tr. 557-564).  Ms. Dodd found the Plaintiff to have the following frequent postural limitations: climbing, stooping, kneeling, crouching, and crawling. (Tr. 557-564).   Ms. Dodd found that Plaintiff did not have any manipulative, visual, or communicative limitations. (Tr. 557-564).   Regarding environmental limitations, Ms. Dodd listed that Plaintiff should avoid concentrated exposure to extreme cold and wetness. (Tr. 557-564).   Ms. Dodd concluded that the "claimant's symptoms are consistent with the MDI's (medically determinable impairment); but the degree of severity is not totally supported by physical evidence and claimant should be able to function within the parameters of this RFC (residual functional capacity)."  There was no medical source statement regarding the claimant's physical capabilities on file at the time of this assessment. (Tr. 557-564).

On August 24, 2009, Sharmishtha Desai, M.D., completed a Physical Residual Functional Capacity Assessment. (Tr. 576).  Dr. Desai determined that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, stand and/or walk at least two hours in an eight-hour work day, sit for six hours in an eight-hour work day, and was unlimited in the push and/or pull operation for hand and/or foot controls. (Tr. 577).  Supporting these determinations, Dr. Desai noted that a "stress echo" on September of 2008 showed moderately reduced exercise capacity but no chest pain or arrhythmia; an x-ray of the spine showed only mild stenosis and disc bulges with no evidence of disc herniation; and there was no evidence of osteoporosis. (Tr. 577-78).

Furthering this determination, Dr. Desai noted that serial exams through May 26, 2009, reported only mild to moderately limited lumbar range of motion and there was no evidence of deformity, instability, or significant functional loss of any major joint. (Tr. 577-78).  As a final point on this matter, Dr. Desai points to Plaintiff's annual physical exam on May 26, 2009, where Plaintiff reported no complaints and the exam was "essentially benign." (Tr. 577-78).    Dr. Desai concluded that while Plaintiff's symptoms may somewhat be attributable to a medically determinable impairment, the "level of severity of claimant's alleged subjective physical symptoms are not totally proportionate to objective findings in file." (Tr. 577-78).   Therefore, Dr. Desai ultimately found that the Plaintiff appears to be able to function within the limits of this RFC. (Tr. 577-78).

### D.  Specific Issues

Plaintiff raises two issues on appeal. As stated by Plaintiff, they are: (1) The ALJ failed to properly weigh the medical evidence of Dr. Daitch and Dr. Stein as required by 20 C.F.R. § 404.1527; and (2) The ALJ failed to properly evaluate Plaintiff's credibility by applying the wrong legal standard.

### 1.  Consideration of the Weight Given to the Medical Evidence

Plaintiff asserts that the ALJ failed to properly weigh the medical evidence, specifically the opinions of Dr. Daitch and Dr. Stein. (Doc. 16 at 7). Here, the ALJ gave "little weight" to the opinion of Dr. Daitch because no explanation was provided for his opinion of Plaintiff's limitations; he has not treated Plaintiff since September 15, 2008; and his opinions are not consistent with the medical record of the evidence as a whole. (Tr. 25) Plaintiff claims that Dr. Daitch's opinions were in fact supported by clinical and diagnostic evidence and were not contradicted by substantial evidence and thus should be given controlling weight. (Doc. 16 at

10). It is also Plaintiff's position that even if Dr. Daitch's opinion was not given controlling weight, the ALJ still erred by rejecting his findings in support of non-examining state agency sources. (Doc. 16 at 10). The Commissioner responds that the ALJ properly gave Dr. Daitch's opinion little weight after finding good reasons that were supported by substantial evidence in the record. (Doc. 17 at 12).

Both parties cite to 20 C.F.R. § 404.1527(c) which states the ALJ, in assigning weight to medical opinions, must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). Furthermore, the court must consider the following factors in determining the weight given to any medical opinion: the examining and treating relationships, evidence in support of a medical opinion, the consistency between a medical opinion and the record as a whole, and whether the opinion was given by a specialist in the field. *Id.*

Plaintiff asserts the ALJ erred by assigning little weight to Dr. Daitch because his opinion was in fact supported by clinical and diagnostic evidence and the opinions are not contradicted by other substantial evidence. 20 C.F.R. § 404.1527(c)(2). Plaintiff claims this clinical and diagnostic evidence included reports of low back tenderness, pain with changes in position, and MRI findings. (Tr. 382-383). It is also argued that these opinions are consistent with examination findings of 50% decreased lumbar range of motion throughout, pain with certain movements, and mildly decreased hip motion to the left. (Doc. 16 at 9). The Commissioner contends that the opinion of a treating physician "may be discounted when the opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c); SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *Phillip v. Barnhart*, 357 F.3d at 1240-41." (Doc. 17 at 11). Furthermore, the Eleventh Circuit has held that the opinions of

treating physicians should be given substantial weight; *unless* good cause exists to the contrary. *Crawford*, 363 F.3d 1155, 1159 (11th Cir. 2004)(emphasis added).  "Good cause" to discount a treating physician's opinion exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Miller v. Barnhart*, 182 F. App'x. 959, 963 (11th Cir. 2006) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)).

In reaching his decision, the ALJ correctly reviewed all of the evidence of record and gave good reason as to the weight he assigned the opinions of Dr. Daitch. The ALJ gave Dr. Daitch's opinion little weight due to the lack of relevant evidence supporting his opinions as well as the lack of consistency with the record as a whole. (Tr. 25).  The only evidence provided by Dr. Daitch to support his opinion was the subjective complaints from Plaintiff along with a lumbar MRI, listing only mild degenerative disc disease. (Tr. 383) Although the MRI in certain situations may be viewed as substantiating diagnostic evidence, in this case the fact that only mild degenerative disc disease was found, along with the fact that this was inconsistent with the record as a whole, provided good cause for the ALJ's determination. 20 C.F.R. § 404.1527(c); SSR 96-2p.  Furthermore, the opinion provided by Dr. Daitch a year after his last examination noted Plaintiff was disabled and incapable of full-time work, which was based on no new medical findings nor supported by evidence. (Tr. 634).  Thus, the ALJ correctly assigned little weight to the opinion of Dr. Daitch after finding the opinion was not supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(c); SSR 96-2p; *Crawford*, 363 F.3d at 1159; *Phillips*, 357 F.3d at 1240-41.

The ALJ was also correct in assigning little weight to Dr. Daitch's opinion, as it was inconsistent with the record as a whole. (Tr. 25). This finding was based on Plaintiff's failure to report back pain during multiple visits with Dr. Martin as well as his ability to lift weights, sit on a train for many hours, drive, and work as a vendor and security guard after the alleged onset date. (Tr. 25, 26, 592-93, 659-60, 673-74, 676-77,692). The ALJ found these facts from the record were adverse to the opinion of Dr. Daitch, most notably that the Plaintiff was disabled and unable to stand, sit, or walk for more than thirty minutes at a time. (Tr. 364). Therefore, the ALJ made the correct determination giving Dr. Daitch's opinion little weight because it is inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c); SSR 96-2p; Crawford, 363 F.3d 1155, 1159 (11th Cir. 2004); Phillips, 357 F.3d at 1240-41.

Second, Plaintiff claims that the ALJ also erred in rejecting the opinions of Dr. Stein due to him not providing any clinical or diagnostic support for his opinions, along with the fact that he only examined the Plaintiff once, and the evidence was inconsistent with the record as a whole. (Tr. 25) The ALJ was correct in determining that because Dr. Stein had only examined the Plaintiff once and was not a treating source, his opinion was not entitled to any special deference. See 20 C.F.R. §§ 404.1502, 404.1527(c)(2); Crawford, 363 F.3d at 1160 (finding that opinions from sources who have only treated the Plaintiff once are not entitled to great weight).

Furthermore, the ALJ found that Dr. Stein's opinion was without support and inconsistent with the record. (Tr. 25). During the sole examination, which was requested by Plaintiff's counsel, Dr. Stein opined that plaintiff was disabled and a candidate for Social Security Disability benefits. (Tr. 636).[4] In support of his opinion, Dr. Stein cited to Plaintiff's subjective

---

[4] The opinion provided by Dr. Stein is conclusory on an issue that is reserved for the Commissioner. Therefore, it is not entitled to any weight. 20 C.F.R. § 404.1527(d); SSR 96-5p; see Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)(noting concern not with the opinions of the legal consequences of claimants' medical condition, but rather the doctors' evaluations of his condition and the medical consequences that may result).

complaints of pain and abilities as well as an MRI on record which showed Plaintiff had degenerative disc disease. (Tr. 636).   As discussed above, the opinion is only afforded great weight if it is substantiated by diagnostic findings and is not inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c); SSR 96-2p; *Crawford*, 363 F.3d at 1159; *Phillips*, 357 F.3d at 1240-41. Therefore, applying the opinion of Dr. Stein to the aforementioned inconsistencies with the record, it is clear the ALJ was correct in rejecting Dr. Stein's opinion as it was not substantiated and is inconsistent with the record. *Id.*

Lastly, Plaintiff argues that the ALJ's rejection of Dr. Stein's opinion was inappropriate as he gave great weight to the state medical examiners who never examined Plaintiff in person. (Doc. 16 at 11).   Dr. Desai, the state medical examiner, did not examine the Plaintiff but did review medical files and determined that Plaintiff is able to walk for two hours in an eight hour work day and sit for six hours in an eight hour work day. (Tr. 577).   Although generally a treating doctor's opinion is given more weight than a non-examining doctor, as stated above there are many factors that go into the consideration of weight given to medical opinions. *See* 20 C.F.R. § 404.1527(c),(e); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872-74 (11th Cir. 2001) (Finding the ALJ was justified in giving more weight to non-examining consultant's opinions over those of a treating physician).   These factors include the evidence provided to support the opinion, the consistency of the opinion with the record as a whole, the examining and/or treating relationship, the doctors' specialty, and other factors. *See* 20 C.F.R. § 404.1527(c),(e).   The opinion of Dr. Desai is found to be more consistent with the findings on record as discussed above regarding Plaintiff's abilities to take long trips sitting down, lift weights, and perform other daily functions that are inconsistent with his subjective complaints of back pain. (Tr. 26).   Thus, the ALJ was correct in his determination that Dr. Desai's opinion be

afforded greater weight as it was consistent with the record as a whole and supported by medical findings. *See* 20 C.F.R. § 404.1527(c), (e); SSR 96-6p.  Furthermore, following the changes to the regulations in 1991 and 2000, 65 Fed. Reg. 11,866, the regulations provide that an opinion from a non-examining physician may be accorded greater weight if the opinion is supported by the record. *See* 65 Fed. Reg. 11,866.  Therefore, the ALJ did not err in granting Dr. Desai's opinion greater weight as it was consistent with the record as a whole.

### 2.  The ALJ's Credibility Assessment was Supported by Substantial Evidence

Plaintiff claims that the ALJ applied the incorrect legal standard in making his credibility determination by evaluating the consistency of Plaintiff's statements against the adjudicators RFC instead of against the evidence of record, as required by 20. C.F.R. § 404.1529(c)(4). (Doc. 16 at 12). The ALJ found that Plaintiff's objective allegations regarding his functional limitations were only partially credible because his testimony was not fully supported by the medical records. (Tr. 26).

Plaintiff argues that the boilerplate language used by the ALJ compared the Plaintiff's testimony against an RFC that is not supported by substantial evidence in the record. (Doc. 16 at 13). As discussed above, the RFC assessment by Dr. Desai was supported by substantial evidence in the record and therefore this point is without merit.  Furthermore, Plaintiff's argument that the ALJ compared the consistency of Plaintiff's statements against just the RFC and not the medical record as a whole is unfounded. (Doc. 16 at 13). The ALJ, in his opinion, stated:

> [Plaintiff's] allegations regarding his functional limitations is only partially credible because his testimony is not fully supported by the medical records and the medical evidence of record fails to confirm the subjective severity of his conditions.  Further, he reported exercising regularly and weightlifting, while at the same time alleging disabling back pain.  Despite the allegations of symptoms

and limitations preventing all work, the record reflects that [Plaintiff] went on vacation via auto train since the alleged onset date.

(Tr. 26). As evidenced, the ALJ made determinations not only placing Plaintiff's complaints against Dr. Desai's RFC but also the evidence of record as a whole such as his weightlifting and other abilities that conflict with his complaints. *Id.* In furtherance of this decision is the record of Dr. Martin's notes which show that several times after the alleged onset Plaintiff visited him with no complaints of back pain, neck pain, or gait disturbance. (Tr. 565, 566).  Thus, the ALJ did not apply the wrong legal standard in making his credibility determination; he correctly compared Plaintiff's allegations to the record as a whole including relevant medical evidence and his daily activities. (Tr. 26); 20. C.F.R. § 404.1529(c)(4).

Plaintiff also claims the ALJ erred by determining that Plaintiff's post-onset work activity was evidence of his ability to complete the functions of his RFC. (Doc. 16 at 13).  Plaintiff claims that the ALJ failed to cite evidence that the work activity was performed at a significant level to show Plaintiff could work on a full-time sustained basis. *Id.* It is therefore claimed that Plaintiff's post-onset activities are insufficient to contradict his allegations. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (holding that participation of everyday activities of short duration, such as housework or fishing, does not disqualify a claimant from disability and is not inconsistent with the limitations recommended by Plaintiff's treating physicians). However, Plaintiff seems to have understated his post-onset activities in the record in comparing them to activities of short duration such as housework or fishing. Plaintiff's activities included standing in a concession stand and vending food as well as sitting in a chair for multiple hours providing security to the ballpark. (Tr. 41-42). Plaintiff's argument is therefore not applicable to the case law cited as he mischaracterized his activities, which has been found above to be

substantial evidence to oppose Plaintiff's subjective complaints of pain. Thus, the ALJ did not err in assessing Plaintiff's credibility.

### E. Conclusion

The ALJ's decision in the instant case is supported by substantial evidence. The ALJ properly considered the amount of weight given to each doctor on record and was correct in his evaluation of Plaintiff's credibility.

Accordingly, it is **RESPECTFULLY RECCOMENDED** that**:**

The decision of the Commissioner be **Affirmed** pursuant to 42 U.S.C. § 405(g) of the Social Security Act.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this 20th day of August, 2013.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record